[No. 46657. En Banc. October 9, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT M. MARK, *Petitioner.*

*Edwards & Barbieri,* by *Charles K. Wiggins,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Kenneth W. Sharaga, Special Deputy,* for respondent.

*James H. Webster* on behalf of Retail Store Employees, amicus curiae.

ROSELLINI, J.—Albert M. Mark has been a pharmacist in Seattle since 1954 and operates two pharmacies in West Seattle. Mr. Mark provided prescription service to welfare recipients pursuant to the federal Medicaid program under an agreement with the Department of Social and Health Services (Department). As a result of findings made upon

an audit of his claims, he was charged with grand larceny and forgery.

The prosecution alleged that Mr. Mark had submitted claim forms for medications neither prescribed by a physician nor delivered to a welfare recipient. Mr. Mark's defense was that discrepancies were caused by inadvertent error and by substituting the names of acceptable drugs for nonformulary drugs actually dispensed but for which the Department would not reimburse the pharmacists. He admitted that he had listed some prescriptions which had not been authorized or delivered; but contended that this was necessary in order to obtain reimbursement for drugs actually furnished and which a computer service that he utilized had improperly rejected.

The claim forms required by the Department included a "prescription form." On this form the actual prescription was required to be reported, and there was a space marked "physician's signature." However, it was the practice of physicians to telephone many prescriptions to the pharmacist. Often, too, a prescription would be renewable. In such instances, the defendant would type or print the physician's name in the place provided for his signature. This practice was authorized by the Department. Each claim form was signed by the defendant, who represented that the facts stated thereon, including the fact of a prescription having been ordered by a physician, were true.

The trial court instructed the jury with respect to grand larceny and also with respect to forgery, as defined in RCW 9.44.010 and .020[1] (Laws of 1909, ch. 249, § 338), which were in effect when the alleged offenses occurred. The jury's

---

[1] "Within the provisions of this chapter relating to forgery, a 'written instrument,' or a 'writing,' shall include an instrument partly written and partly printed or wholly printed with a written signature thereto, or any signature or writing purporting to be a signature of or intended to bind an individual, partnership, corporation or association or an officer thereof.

"The words 'forge,' 'forgery,' 'forged,' and 'forging,' shall include false making, 'counterfeiting' and the alteration, erasure or obliteration of a genuine instrument in whole or in part, the false making or counterfeiting of the signature of a party or witness, real or fictitious, and the placing or connecting together with intent to

verdict found the defendant guilty of both crimes, and the Court of Appeals, Division One, affirmed the judgment entered on the verdict in an unpublished opinion. *State v. Mark,* 23 Wn. App. 1050 (1979). We granted a petition to review the question whether the writing in of a physician's name on the claim form was an act of forgery if no prescription had in fact been received by the defendant.

■ The Court of Appeals held that the filling in of blank prescription billing forms without the doctor's authorization constituted forgery. We cannot agree. It is undisputed that the physician's name, when filled in by the defendant, did not purport to be the signature of the physician; rather it was a representation that the physician had prescribed the drugs for which claim was made. As the Court of Appeals recognized, there was no showing that the defendant forged any prescriptions. His offense was in representing to the Department the number and kind of prescriptions which he had received. A misrepresentation of fact, so long as it does not purport to be the act of someone other than the maker, does not constitute forgery.

In *Dexter Horton Nat'l Bank v. United States Fid. & Guar. Co.,* 149 Wash. 343, 270 P. 799 (1928), it was contended that a cashier's unauthorized endorsement of a check in the name of the company, by himself as cashier, was a forgery. That was not a criminal action but rather a suit upon a policy of insurance indemnifying the bank which had cashed the check against losses sustained through payment of forged checks. Even though this court was called upon to construe the language of the policy against the indemnifier, it held that, giving the word "forgery" its ordinary dictionary meaning, the writing was exactly what it purported to be and thus was not a forgery. While the cashier had no authority to sign his company's

---

defraud, of different parts or the whole of several genuine instruments." RCW 9.44.010, in pertinent part.

"Every person who, with intent to defraud, shall forge any writing or instrument . . . shall be punished by imprisonment in the state penitentiary for not more than twenty years." RCW 9.44.020, in pertinent part.

name and cash the check, he purported to do no more than sign it himself as its agent. The instrument, we said, might be a false writing in that it either directly or by inference stated a lie, but it at least was what on its face it seemed to be.

That is precisely the situation here, and here we deal with a criminal statute which must be strictly construed in favor of the defendant. In writing the doctors' names on his claim form, the defendant represented that they had submitted prescriptions to him, but he did not represent that the doctors themselves had signed the claim forms.

In *Dexter Horton,* we quoted with approval the following from the case of *People v. Bendit,* 111 Cal. 274, 43 P. 901 (1896):

> "When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely purports to be the writing of another. The falsity must be in the writing itself,—in the manuscript. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genuine writing of another person that which is not the writing of such other person. The instrument must fraudulently purport to be what it is not. And there was nothing of the kind in the case at bar. . . ."

149 Wash. at 348. *Accord, State v. Marshall,* 25 Wn. App. 240, 606 P.2d 278 (1980).

Thus, there is a significant distinction between a forgery and a writing falsely representing that the facts which it reports are true. Since the claim forms submitted by the defendant were exactly what they purported to be, it was error to instruct the jury that it could properly find the defendant guilty of forgery, and the Court of Appeals was incorrect in sustaining the convictions on those counts.

A number of witnesses testified to the good character and reputation. of the defendant in the community. With respect to that testimony, the court instructed the jury as follows:

Evidence has been presented in this case which bears upon the good character and good reputation of the defendant. Such evidence should be considered by you, along with all the other evidence, in determining the guilt or innocence of the defendant.

Instruction No. 12.

It is claimed that the court erred in not giving the petitioner's requested instruction, which added the following as a second sentence:

Such evidence is pertinent and proper in a criminal proceeding, and may in and of itself create a doubt as to the guilt of the defendant.

In support of his contention that it was reversible error to refuse his requested instruction, the defendant relies upon *State v. Allen,* 89 Wn.2d 651, 574 P.2d 1182 (1978). We held in that case that it was not error for the trial court to grant a new trial for having failed to give an instruction on the relevance of character evidence with respect to the issue of guilt. The requested instruction in that case had included the sentence proposed by the defendant in this case, and the trial court had expressed doubts about its propriety.

We held that the sentence was a correct statement of law; that the trial court would have been justified in giving the instruction. Noting the State's objection that, as worded, the instruction permitted the jury to find the defendant innocent even though it was convinced upon the other evidence that he was guilty, we said that the court would have been justified in a sentence to accommodate that objection. In the course of the opinion, we cited *State v. Cushing,* 17 Wash. 544, 50 P. 512 (1897), where we held that it was not error to refuse an instruction containing the sentence proposed here, where another instruction charged the jury to consider evidence of good character with the other evidence in arriving at their verdict. We found no reason to overrule that case.

■ *State v. Allen, supra,* stands for the proposition that it is not reversible error to instruct the jury that character

evidence may in and of itself create a doubt as to the guilt of the defendant; but it does not go so far as to say that the refusal of such an instruction is reversible error, where the jury is otherwise instructed that it should consider the evidence as bearing on the guilt or innocence of the defendant. And we indicated that the proposed instruction was vulnerable, at least to some extent, to an objection that it might mislead the jury.

■ The instruction which the court gave in this case advised the jury that evidence of character should be considered upon the question of guilt or innocence of the defendant. It is not denied that the instruction defined the permissible use of character evidence with sufficient breadth to allow counsel to argue his theory that the defendant's character was such as to make it doubtful that he committed the alleged crimes.

An instruction is sufficient if it correctly states the law, is not misleading, and permits counsel to argue his theory of the case. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968).

A further contention raised in the Court of Appeals, that the lower court erred in not granting a change of venue because of pretrial publicity, is renewed here. The record shows that the prosecutor, in his affidavit of probable cause for arrest, alleged that the defendant had defrauded the State of amounts over $200,000. The evidence offered at the trial showed losses of no more than $2,300. The prosecutor participated in the publicity which the allegations in this affidavit engendered. Such participation was open to criticism, in light of principle No. 7, Bench–Bar–Press Principles and Guidelines (1974). *See State v. Stiltner,* 80 Wn.2d 47, 491 P.2d 1043 (1971). However, we are satisfied that the trial court did not abuse its discretion in denying a change of venue, for the reasons stated in the opinion of the Court of Appeals.

The decision of the Court of Appeals, Division One, is reversed in part, and the cause is remanded with directions

to the trial court to dismiss the forgery convictions. In all other respects, the judgment is affirmed.

UTTER, C.J., STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

Reconsideration denied December 2, 1980.