FILED
COURT OF APPEALS
DIVISION II

2014 APR -1 AM 9: 25

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44087-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAINA S. SMITH, | |
| Appellant. | |

MAXA, J. – Daina Smith appeals her conviction on one of two forgery counts (count III),

arguing that the State's evidence was insufficient. She also argues that in the event we reverse

her conviction, we must remand for resentencing on the remaining forgery conviction (count II).

We agree, and reverse Smith's conviction on count III and remand for resentencing on count II.[1]

## FACTS

Smith started working for American Legion Post 150 as a part-time bar manager in

October 2010. She was trained to complete the accounting forms used by Post 150, including

how to account for bar and gambling receipts in a daily cash report form.

On January 16, 2011, Jennifer Mitchell, a bartender, counted money received from a pull-

tab gambling game operated by Post 150 called "Super Big Casino." Report of Proceedings (RP)

(Feb. 26, 2012) at 37-38. She wrote the total ($1360) on a sticky note and put the money in a

---

[1] A commissioner of this court initially considered this appeal as a motion on the merits under
RAP 18.14 and then referred it to a panel of judges.

manila envelope. On January 17, 2011, Smith initially created a daily cash report showing the amount reported by Mitchell in her note. However, Smith later discarded that report and Mitchell's note.

Smith then filled out a second daily cash report that did not mention any proceeds from the Super Big Casino game. The State presented evidence that Smith prepared the inaccurate report to cover up the fact that she had taken some of the cash that had been placed in the envelope. Preparing the second report that included inaccurate information formed the basis for the forgery charge in count III.

Smith initially listed the proceeds from the Super Big Casino game on the monthly income summary. However, she later altered that report by whiting out the reference to Super Big Casino. This alteration formed the basis for the forgery charge in count II.

A jury convicted Smith on both count III and count II. The jury, by special verdict, found the crimes aggravated by Smith's use of a position of trust, confidence or fiduciary responsibility. The trial court sentenced Smith to concurrent exceptional sentences of 12 months and one day on each forgery conviction.

## ANALYSIS

A.   FORGERY

Smith argues that here conduct did not fall within the statutory definition of forgery and therefore there is insufficient evidence to support her conviction. A challenge to the sufficiency of the evidence admits the truth of the State's evidence, and all reasonable inferences therefrom are drawn in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.2d 936 (2006). Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the

charged crime beyond a reasonable doubt. *State v. Montgomery*, 163 Wn.2d 577, 586, 183 P.3d 267 (2008).

RCW 9A.60.020(1) provides:

A person is guilty of forgery if, with intent to injure or defraud:

(a) He falsely makes, completes, or alters a written instrument or;
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.

The parties do not dispute that the document was a "written instrument." Former RCW 9A.60.010(1) (1999). The issue is whether Smith falsely made, completed or altered the daily reports. These terms are all defined in former RCW 9A.60.010:

(4) To "falsely make" a written instrument means to make or draw a complete or incomplete written instrument which purports to be authentic, but which is not authentic either because the ostensible maker is fictitious or because, if real, he or she did not authorize the making or drawing thereof;

(5) To "falsely complete" a written instrument means to transform an incomplete written instrument into a complete one by adding or inserting matter, without the authority of anyone entitled to grant it;

(6) To "falsely alter" a written instrument means to change, without authorization by anyone entitled to grant it, a written instrument, whether complete or incomplete, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner.

The State argues that Smith falsely completed or made the second daily cash report when she failed to include accurate information regarding the Super Big Casino game in that report. We disagree for two reasons.

First, our Supreme Court has held that an employee does not commit forgery by falsely completing a genuine document that he or she otherwise has the authority to complete. *See In re Pers. Restraint of Keene*, 95 Wn.2d 203, 210–11, 622 P.2d 360 (1980). In *Keene*, the owner of a business left a signed $100 check that did not have the payee section completed with an employee to use for "business purposes." *Keene*, 95 Wn.2d at 210-11. However, the employee

3

completed the check by designating himself as the payee and did not use the money as intended. Keene, 95 Wn.2d at 211. The court concluded that these facts did not support a forgery conviction because the employee was authorized to complete and cash the check:

> The petitioner completed the check. However, he was authorized to do so by . . . his employer, who had signed it. He was also authorized to cash it. What he was not authorized to do was to use the money for nonbusiness purposes. Thus, [defendant]'s unauthorized personal use of the $100 constituted third degree theft under [former] RCW 9A.56.050 [(1975)], not forgery as defined in [former RCW 9A.60.020 [(1975)].

*Keene*, 95 Wn.2d at 211.

Here, the State does not dispute that as the bar manager, Smith was authorized to complete the daily cash reports. Although Post 150 may have expected Smith to follow correct procedures when filling out the reports, when she incorrectly completed the second daily cash report she was acting within her authorization, just like the employee in *Keene*.

Second, even if Smith was not authorized to fill out the daily cash reports in any manner she chose, the State presented insufficient proof of forgery because the daily cash report itself was genuine; i.e., Smith was the maker of the report. Division One of this court stated that "[f]orgery does not involve the making of false entries in an otherwise genuine document." *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993). "A misrepresentation of fact, so long as it does not purport to be the act of someone other than the maker, does not constitute forgery." *State v. Mark*, 94 Wn.2d 520, 523, 618 P.2d 73 (1980). Several cases draw a distinction between a forged document and a genuine document that contains false information. *Dexter Horton Nat'l Bank v. U S. Fid. & Guar. Co.*, 149 Wash. 343, 345, 270 P. 799 (1928) ("When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely purports to be the writing of another."); *accord State v. Marshall,,* 25 Wn. App. 240, 242, 606

4

P.2d 278 (1980) (genuine Medicaid reimbursement forms containing false information did not support forgery conviction).

Here, simply because Smith completed a daily cash report form with false information regarding gambling proceeds does not mean that she committed forgery. Smith prepared the report, and the report did not purport to be anything other than what it was. *Esquivel*, 71 Wn. App. at 871 (noting the difference between "false statements in a document and a false document"); *Marshall*, 25 Wn. App. at 242.

The State also argues that Smith falsely altered the first daily cash report by discarding it and replacing it with the second daily cash report that did not include proceeds from the Super Big Casino game. However, the definition of "to falsely alter" a written instrument includes only acts that "change" an instrument. Former RCW 9A.60.010(6). The plain terms of the statutory definition do not include discarding a document and replacing it with a second genuine, but falsely completed, one. Former RCW 9A.60.010(6) ("To 'falsely alter' a written instrument means to change, without authorization by anyone entitled to grant it, a written instrument.").

We hold that Smith's including false information the second daily cash report did not constitute falsely making, completing or altering an instrument. As a result, although Smith's conduct may have supported another criminal charge – such as theft – it was not forgery.

B.    SENTENCING

Smith argues that in the event we reverse her conviction on count III, we must remand for resentencing on count II. She relies on the trial court's statement during sentencing that "I certainly feel that [Smith's sentence] needs to be substantially more than [the standard range of] 90 days based on the fact there's two counts." RP (Sept. 28, 2012) at 24. We agree that resentencing on count II is appropriate.

No. 44087-3-II

"An exceptional sentence may be upheld on appeal even where all but one of the trial court's reasons for the sentence have been overturned. However, remand for resentencing is necessary where it is not clear whether the trial court would have imposed an exceptional sentence on the basis of only the one factor upheld." *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993) (citation omitted). Here, we cannot conclude that the trial court would have imposed the same exceptional sentence on count II if Smith had not been convicted on count III. A review of the court's oral opinion at Smith's sentencing reveals that it placed emphasis on the existence of more than one forgery conviction in declaring Smith's sentence. As a result, what sentence the trial court would have imposed if Smith had been convicted only of count II is not clear. Accordingly, resentencing is required for count II.

We vacate Smith's conviction on count III and remand for resentencing on count II.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, J.

LEE, J.