FILED
COURT OF APPEALS
DIVISION II

2015 APR 28 AM 8:37

STATE OF WASHINGTON
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45827-6-II |
| Respondent, | |
| v. | |
| AMBER D. ROBBINS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Amber Robbins appeals four convictions of identity theft in the second degree, arguing that the trial court commented on the evidence and misstated the law in instructing the jury. She further argues that insufficient evidence supports the convictions. Because the instructions at issue did not convey the court's personal opinion about the case or resolve a factual issue, the trial court did not comment on the evidence. And, because the instructions as a whole adequately explained the law regarding identity theft, the trial court did not misstate the law. Sufficient evidence existed to prove that Robbins possessed stolen pieces of identification with criminal intent. We affirm her convictions.

FACTS

Puyallup Police Sergeant Joseph Pihl and Officer Dylan Rice were clearing a traffic stop when they noticed a woman pumping gas at a nearby gas station. The woman seemed very nervous and avoided eye contact with the officers. After Pihl ran her car's license plate, he found that an arrest warrant existed for the registered owner, Cynthia Robbins. Pihl thought that Cynthia Robbins's photograph matched the woman he saw, so he contacted her and asked if she was Cynthia Robbins.

The woman identified herself as Amber Robbins and stated that her mother Cynthia was the registered owner of the car. When Pihl asked for identification, Robbins reached into the back seat of the car, grabbed a purse, put it on her lap, and searched through it. When she did not find any identification in her purse, she reached into her pants pocket and presented Pihl with a driver's license identifying herself as Amber Robbins.

Robbins volunteered that she had an arrest warrant, which Pihl confirmed. Pihl then asked Robbins to exit the car and obtained her consent to search it. During the search, Rice looked into the purse. Robbins acknowledged that the purse was hers and that it contained heroin. When Rice couldn't find any drugs, Robbins reached into the purse and pulled out a film canister containing a substance that later tested positive for heroin.

The purse also contained 22 pieces of identification and financial information in the names of eight other people. This information included driver's licenses, social security cards, a credit card, checks, and deposit slips. Robbins told the officers that she found these items in a dumpster behind a residence, that she did not know any of the people they belonged to, and that the drugs belonged to a friend. Robbins could not provide any information about the residence with the dumpster.

The State charged Robbins by amended information with one count of unlawful possession of a controlled substance and four counts of identity theft in the second degree. The trial court denied her motion to suppress her pretrial statements about her warrant and the drugs in her purse.

At trial, Sergeant Pihl and Officer Rice testified consistently with the facts previously cited. Pihl added that Robbins identified the purse in her car as "mine." 2 Report of Proceedings (RP) at 155. Four women then testified that their wallets or personal items had been stolen within the past

several months, and they identified various forms of identification and financial information found in Robbins's purse as their own. None of them knew Robbins, except for one woman who believed that she had met her once.

Robbins testified that the purse belonged to a friend who had forgotten to take it when Robbins dropped her off shortly before stopping for gas. Robbins added that she told the officers that the purse might contain drugs, but only because she knew her friend was a drug user. Robbins also testified that she did not look into the purse for her identification, that she did not know what was inside the purse, and that she did not take drugs out of the purse. She denied telling the officers that she found the pieces of identification and financial information in a dumpster and stated that she consented to a search of her car because she did not think it contained anything illegal.

The jury found Robbins guilty as charged and the trial court imposed concurrent sentences of 12 months and 1 day in prison. Robbins now seeks the reversal of her identity theft convictions.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Robbins argues that the evidence was insufficient to convict her of identity theft. Evidence is sufficient if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997). Circumstantial evidence is not to be considered any less reliable than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The identity theft statute prohibits a person from knowingly obtaining, possessing, or using a means of identification or financial information of another person with the intent to commit "any crime." RCW 9.35.020(1); *State v. Sells*, 166 Wn. App. 918, 923, 271 P.3d 952 (2012), *review denied*, 176 Wn.2d 1001 (2013). Actual use of the means of identification is not required in order to convict. *Sells*, 166 Wn. App. at 924. Nor does the State need to prove the specific crime that the defendant intended to commit. *State v. Fedorov*, 181 Wn. App. 187, 197-98, 324 P.3d 784, *review denied*, 181 Wn.2d 1009 (2014). Some proof of intent to commit a crime is required, however, and Robbins argues that the evidence was insufficient to show that she possessed the means of identification at issue with any such intent.

As our supreme court recently pointed out, possession alone does not support an inference of intent. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). When intent is an element of a crime, it may be inferred "'if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *Vasquez*, 178 Wn.2d at 8 (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). Although intent is typically proved from circumstantial evidence, it may not be inferred from evidence that is "'patently equivocal.'" *Vasquez*, 178 Wn.2d at 8 (quoting *Woods*, 63 Wn. App. at 592). Possession together with "'slight corroborating evidence'" may be sufficient, however, and such corroboration may consist of the giving of a false explanation or one that is improbable or difficult to verify. *Vasquez*, 178 Wn.2d at 8 (quoting *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993)); *State v. Ladely*, 82 Wn.2d 172, 175, 509 P.2d 658 (1973).

In *Vasquez*, the issue was whether the evidence was sufficient to show the intent to injure or defraud that is needed to prove forgery. 178 Wn.2d at 13. The court held that the defendant's possession of forged identification cards alone was not sufficient to prove the necessary intent, and noted that the defendant's ready admission to a security guard that the cards were forged belied any intent that he intended to defraud the guard. *Vasquez*, 178 Wn.2d at 14-16.

Here, the State was required to prove that Robbins possessed another person's means of identification with the intent to commit any crime. Both officers testified that she told them that the purse containing the 22 items of identification and financial information in other names belonged to her. They also testified that she said she found the items in a dumpster behind a residence and that she could not describe the location of the residence. At trial, Robbins denied claiming ownership of the purse, and she also denied making any reference to finding the items in a dumpster. Instead, she testified that the purse belonged to a friend whom she had dropped off shortly before stopping for gas.

We agree with the State that this evidence was sufficient for a reasonable jury to find that Robbins possessed the items of identification and financial information with the intent to commit a crime. She possessed 22 items belonging to other people, offered an explanation for their possession on the day of her arrest that the officers could not verify, and at trial offered a completely different explanation. Her improbable and contradictory statements, as well as the number of stolen items in her purse, provide sufficient corroborating evidence of criminal intent. We hold that the evidence was sufficient to prove Robbins's four convictions of identity theft in the second degree.

II.    COMMENT ON THE EVIDENCE

Robbins argues here that the trial court improperly commented on the evidence by instructing the jury that her intent to commit "any crime" could include the crime of theft and by instructing the jury on the definition of theft.  3 RP at 242.

Article 4, section 16 of the Washington Constitution provides:  "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."  This provision prohibits a judge from "conveying to the jury his or her personal attitudes toward the merits of the case" or instructing a jury that "matters of fact have been established as a matter of law." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997).  Any remark that might suggest that the jury need not consider an element of an offense may qualify as judicial comment. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).  Because the constitution prohibits any judicial comment on the evidence, a claimed error based on such a comment involves a manifest constitutional error that may be challenged for the first time on appeal. *Levy*, 156 Wn.2d at 719-20.

The instructions at issue are as follows:

Instruction No. 14

A person commits the crime of identity theft in the second degree when, with intent to commit any crime, such as theft, he or she knowingly obtains, possesses, uses, or transfers a means of identification or financial information of another person, living or dead, and obtains credit, money, goods, services or anything else that is $1500 or less in value or does not obtain anything of value.

Clerk's Papers at 51.

Instruction No. 16

Theft means:
—to wrongfully obtain or exert unauthorized control over the property or services of another, or the value thereof, with intent to deprive that person of such property or services; or
—to appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive that person of such property or services.

CP at 53. The "to convict" instructions on identity theft stated that the crime required proof of Robbins's intent to commit "any crime" and did not refer to the crime of theft.

The court proposed instruction 16 after the defense moved for a directed verdict on the identity theft counts. Defense counsel cited *Vasquez* in arguing that Robbins's possession of the items of identification was not sufficient to show her intent to commit a crime and that the State had failed to prove identity theft. The trial court reasoned that Robbins's possession of the items raised an inference of her intent to commit theft. After finding sufficient evidence to support the identity theft charges, the court proposed an instruction defining theft.

The State objected to instruction 16 because it would heighten its burden and require it to prove the specific crime that Robbins intended to commit. The State later agreed to include the instruction and suggested inserting "such as theft" after the reference to "any crime" in instruction 14, the definitional instruction for identity theft. 3 RP 242. The court adopted this suggestion.

The defense objected on the ground that it had not prepared a defense to rebut the theory that Robbins intended to commit theft. After the court permitted the defense to reopen its case so that Robbins could testify, the defense argued that instructions 14 and 16 could confuse the jury about the law regarding identity theft.

Washington courts have held that instructions relating to the reliability of eyewitness testimony and alibi evidence are comments on the evidence in violation of the constitutional prohibition. *State v. Allen*, 161 Wn. App. 727, 742, 255 P.3d 784 (2011), *aff'd on other grounds*,

7

176 Wn.2d 611, 294 P.3d 679 (2013). These holdings reflect the principle that when an instruction assumes as true something that is in dispute, it is a comment on the evidence. *State v. Haack*, 88 Wn. App. 423, 430, 958 P.2d 1001 (1997); *see also State v. Francisco*, 148 Wn. App. 168, 179, 199 P.3d 478 (2009) ("'touchstone of error'" is "'whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury'" (quoting *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995)).

The instructions at issue neither assumed as true something that was in dispute nor communicated to the jury the court's belief concerning the truth of certain testimony. Rather, the instructions offered an example of a crime that Robbins could have intended to commit and defined that crime for the jury. The instructions did not limit the jury to finding that she intended to commit the crime of theft so did not resolve an issue of fact. We reject Robbins's argument that the instructions at issue constituted an unlawful comment on the evidence.

We also reject her related argument that the instructions misstated the law. Jury instructions must be considered in their entirety to determine if there is reversible error in a specific instruction. *State v. Schulze*, 116 Wn.2d 154, 167, 804 P.2d 566 (1991). There is no error if the instructions, when viewed as a whole, adequately explain the law and enable the parties to argue their theories of the case. *Schulze*, 116 Wn.2d at 168.

As explained, the "to convict" instructions accurately informed the jury that it needed to find that Robbins acted with the intent to commit "any crime" to return guilty verdicts on the four identity theft counts. Instruction 14 provided an example of a crime that Robbins might have intended to commit and instruction 16 defined that crime. When viewed as a whole, these instructions did not misstate the law or prevent the parties from arguing their theories of the case. During closing argument, the State asserted that Robbins could have acted with the intent to

commit theft. The defense responded that because Robbins's possession of her friend's purse was unwitting, the State had failed to show that she possessed the means of identification in the purse with the intent to commit any crime. We reject Robbins's claim of instructional error and affirm her convictions.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.